UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARRY B. FEINER,

                Movant,

    -v-

UNITED STATES SECURITIES AND EXCHANGE
COMMISSION,

                Respondent.

Case No. 12-MC-0354 (KMK)

OPINION AND ORDER

Appearances:

John J. Phelan, III, Esq.
New York, NY
*Counsel for Movant*

Patrick L. Oot, Esq.
Leslie Kazon, Esq.
Saima S. Ahmed, Esq.
Securities and Exchange Commission
Washington, DC and New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

      Barry Feiner ("Movant") seeks an order preventing the United States Securities and Exchange Commission ("the SEC" or "the Commission") from obtaining access to his financial records, quashing the Commission's administrative subpoenas requiring the production of those records, and directing the subpoenaed party, Valley National Bank ("the Bank"), to withhold delivery of the subpoenaed records. (Dkt. No. 1.) For the reasons stated herein, the Court denies the motion.

## I. BACKGROUND

Movant is an attorney admitted to practice in New York. (Movant's Decl. in Supp. of Mot. for Order ("Movant's Decl.") ¶ 1.) He has represented TAG Virgin Islands, Inc. ("TAG"), a registered investment adviser, for several years. (*Id.* ¶ 7.) In the course of his representation of TAG, Movant has "acted as escrow agent in receiving, holding and disbursing funds to or from TAG, its clients or others." (*Id.*) Movant also represents numerous other clients. (*Id.* ¶ 8.) He holds a "law practice escrow account" and other "accounts for the benefit" of certain clients, including those that have "had no transactions whatsoever with TAG." (*Id.* ¶ 3.) Movant holds all of these accounts, as well as a personal account and a family trust account with the Bank. (*Id.*)

For almost two years, the Commission has apparently been conducting an investigation under the federal securities laws into whether TAG has perpetrated a fraud on its advisory clients. Specifically, the SEC is investigating whether, from at least 2007, TAG's president and co-owner, James S. Tagliaferri, failed to disclose to clients material information about potential conflicts of interest with respect to certain investments and whether he operated a Ponzi-like fraud scheme. (V. Opp'n of SEC to Mot. for Order ("SEC Opp'n") at 2.) There are several pending civil cases against TAG, at least two of which name Movant as a codefendant; the plaintiffs in those suits claim that Tagliaferri's misconduct has cost clients at least $125 million. (*Id.*; Mem. of Law on Challenge of Movant to SEC Subpoena ("Movant's Mem.") at 2.) On January 13, 2011, the SEC issued a Formal Order of Investigation Directing Private Investigation and Designating Officers To Take Testimony in an investigation regarding TAG ("Formal Order"). (SEC Opp'n at 2.) The SEC alleges that Tagliaferri abused his authority over client accounts by causing clients to purchase promissory notes from private companies, for

which transactions he received compensation from those companies, without disclosing his interest to his clients. (SEC Opp'n at 3.) The SEC further alleges that when these notes neared or passed maturity, Tagliaferri raised money to pay the interest or principal by causing other clients to purchase stock of thinly traded public companies from persons associated with the private companies. (*Id.*) According to the Commission, Movant acted as attorney for TAG during this period; drafted transaction documents on behalf of TAG; and maintained the accounts through which TAG's funds flowed. (*Id.*; Movant's Decl. ¶ 7; Movant's Mem. at 3).

On October 12, 2012, the SEC staff issued a subpoena to the Bank, pursuant to the Formal Order. (SEC Opp'n at 4.) The subpoena directed the Bank to produce certain "documents prepared, created, used or dated during the period from January 1, 2007 to [the] present]" with respect to "any accounts held in the name of, under the control of, or for the benefit of" Movant. (Movant's Decl., Ex. A. at 2) Among the documents requested were "[a]ll account opening and closing documents . . .; [a]ll monthly and other periodic account statements; [a]ll documents concerning deposits of $100.00 or more into the account . . .; [a]ll documents concerning withdrawals of $100.00 or more from the account . . .;" and various memoranda, applications and files, contracts, correspondence, and electronically stored information regarding transfers. (*Id.*, Ex. A at 2–3.) The SEC provided notice of the requested documents and a copy of the subpoena to Movant, in accordance with the Right to Financial Privacy Act of 1978, 12 U.S.C. § 3401 et seq. ("the RFPA"). (Movant's Decl., Ex. B.) Movant then timely and properly filed the instant motion with this Court under the RFPA to quash the SEC's subpoena.[1]

---

[1]To reduce the delay to agency investigations such as the one at issue here, the RFPA requires the Court to rule on the instant motion within seven days of the SEC's response to the motion. *See* 12 U.S.C. § 3410(b). Because the SEC filed its response on November 5, 2012, and because November 12 was a government holiday (Veteran's Day), the Court is required to issue

## II. DISCUSSION

The RFPA is the only means by which a bank customer may challenge the disclosure of documents subpoenaed from that customer's bank. *See* 12 U.S.C. § 3410(e); *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745–46 (1984) (discussing procedural mechanisms in the RFPA by which certain bank customers may challenge subpoenas); *Davidov v. SEC*, 415 F. Supp. 2d 386, 387 (S.D.N.Y. 2006) ("Section 3410 of the [RFPA] sets forth the sole judicial remedy available to an individual who seeks to oppose disclosure of financial records to a government authority."). Under the RFPA, this Court's review of the Movant's challenge to the subpoena is limited. "If the court finds that . . . there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry, it *shall* deny the motion . . . ." 12 U.S.C. § 3410(c) (emphasis added). Alternatively, "[i]f the court finds that . . . there is not a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry . . . it shall order the process quashed or shall enjoin the Government authority's formal written request." *Id.* In other words, the Court must consider, first, whether there is a demonstrable basis to believe that the SEC is pursuing a legitimate inquiry and, second, whether the SEC has a reasonable belief that the requested documents are relevant to that inquiry.

With respect to the first consideration, the Court easily concludes that there is a demonstrable reason to believe that the SEC is pursuing a legitimate investigation. "The SEC is charged by Congress with, *inter alia*, investigating possible violations of the nation's securities

---

its decision by November 13, 2012, which it has done. *See* Fed. R. Civ. P. 6(a) (discussing calculation of time, noting that the day of the triggering event is excluded and that the last day is not to be included if it falls on a holiday).

laws." *Davidov*, 415 F. Supp. 2d at 388.  The SEC claims that TAG has engaged in practices and conduct in violation of these laws.  (SEC Opp'n at 2–3 n.4.)  Moreover, the SEC is conducting its investigation pursuant to a formal investigative order that the Commission issued in January 2011.  (*Id.*)  Indeed, even Movant does not appear to argue that the investigation is illegitimate and/or motivated by an illegitimate purpose—i.e., harassment, intimidation, etc.  *See Pennington v. Donovan*, 574 F. Supp. 708, 709 (S.D. Tex. 1983) ("An investigation is legitimate if it is one the agency is authorized to make and is not being conducted solely for an improper purpose such as political harassment or intimidation or otherwise in bad faith.").

With respect to the second consideration, district courts in the Second Circuit are guided by *In re SEC Private Investigation/Application of John Doe re Certain Subpoenas*, No. M8-85, 1990 WL 119321 (S.D.N.Y. Aug. 10, 1990) ("*In re John Doe*").  *See Davidov*, 415 F. Supp. 2d at 391; *Douglas v. United States*, 410 F. Supp. 2d 292, 297 (S.D.N.Y. 2006).  There, Judge Mukasey established the respective burdens of proof and persuasion with respect to the relevance inquiry.  The moving party need not offer a "detailed evidentiary showing," but he or she "must 'show a factual basis' for his [or her] conclusion that the records are irrelevant."  *In re John Doe*, 1990 WL 119321, at *2.  If the moving party satisfies this burden, the government agency is not required "to show that the records *are relevant*, but rather that there is 'a reasonable belief that the records sought are relevant.'"  *Id.* (emphasis added).

Following this approach, the Court concludes that the SEC has established its reasonable belief that the requested records are relevant to the investigation.  At the outset, the Court notes that Movant has, at best, offered a factual basis for his conclusion that the requested bank records are irrelevant only with respect to *some* of the requested records—to wit, records relating to his personal accounts and the accounts of his clients who have had no transactions with TAG.

5

(Movant's Decl. ¶¶ 3, 8.)[2] Movant has not asserted any basis for concluding that the records relating to either TAG's accounts or the accounts through which TAG's funds have flowed are irrelevant. Movant admits as much in his reply memorandum (Movant's Reply Mem. on Mot. for Order ("Movant's Reply") at 8–9.)

But even if Movant had satisfied his burden with respect to all of the requested records, his motion would still be denied. Movant has "misread[] the burden the statute imposes on the SEC." *In re John Doe*, 1990 WL 119321, at *2. The SEC is not required to demonstrate that the "subpoenaed bank records [are] relevant to the inquiry," (Movant's Mem. at 6), nor is "[t]he burden of proof on the issue of relevance . . . entirely on the government," (*id.* at 8). Instead, the SEC must demonstrate merely that it has a reasonable belief that the requested records are relevant. *See* 12 U.S.C. § 3410(c); *In re John Doe*, 1990 WL 119321, at *2. This is not a high burden: "Once a person's connection to apparently illicit conduct has been shown, it is relevant to know whether that person's bank account contains evidence of such conduct. What need be shown is not probable cause, but a good reason to investigate." *In re John Doe*, 1990 WL 119321, at *2. Furthermore, courts have defined relevance quite broadly. *See NLRB v. Am. Med. Response, Inc.*, 438 F.3d 188, 193 (2d Cir. 2006) ("In enforcing administrative subpoenas, courts broadly interpret relevancy, and [t]he relevance of the sought-after information is measured against the general purposes of the agency's investigation . . . . (alteration in original) (citation and internal quotation marks omitted)); *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989) (noting that the concept of relevance is

---

[2] To be clear, the Court is not suggesting that these records are irrelevant. The Court is stating merely that Movant has provided a factual basis for his conclusion that they are irrelevant.

"broad" and includes anything that "touches a matter under investigation" (internal quotation marks omitted)).

Here, "[i]t is not necessary to delve into what space exists, if any, between a showing that documents are 'relevant,' and a showing that there exists a 'reason to believe' that the documents are relevant." *Douglas*, 410 F. Supp. 2d at 297. All of the sought records are the proper subject of the SEC's subpoena under either standard. The Commission has explained that, given Movant's relationship with TAG—Movant prepared TAG's financial documents and maintained accounts through which TAG's funds moved—the Commission needs to investigate all of Movant's accounts to trace any money that might have been fraudulently obtained from, or at the expense of, TAG'S clients. (SEC Opp'n at 7.) This position is eminently reasonable. The SEC's task is to follow the money. The trail appears to lead directly to accounts established by Movant. And the Court is unaware how the SEC could determine which of these accounts, if any, have been used to disguise or disburse TAG's funds, without access to the requested records in the first place. *See In re John Doe*, 1990 WL 119321, at *2 ("By showing that [the customer] has a connection to activity [the SEC] is charged to investigate, the SEC has shown reason for a belief that the bank records it seeks here contain relevant information.").

The Court is unpersuaded by Movant's argument that the subpoena should be limited to records of transactions specifically involving TAG or companies in which TAG invested. (Movant's Reply at 8–9.) The scope of the subpoena is not a decision that Movant gets to make. The fact that the SEC has cast its net broadly and may obtain information that ultimately is not directly relevant to the investigation is, without more, not a basis for the Court to quash or limit the subpoena. *See Carrillo Huettel, LLP v. SEC*, No. 11-CV-0065, 2011 WL 601369, at *2 (S.D. Cal. Feb. 11, 2011) ("Although not every responsive document produced by [the bank] may be

relevant, there is reason to believe that the records overall contain information relevant to the investigation."); *Davidov*, 415 F. Supp. 2d at 389–90 (denying motion to quash subpoenas that "demand[ed] broadly worded and all-inclusive production of documents relating to [suspect] accounts").[3] Additionally, given the relatively low burden imposed on the SEC, the Court finds that the fact that Defendant has been named as a co-defendant with TAG in at least two civil suits alleging fraud and other violations of the securities laws underscores that the SEC has reason to believe that Movant's bank records are relevant to the SEC's investigation of TAG. (Dkt. No. 1 (12-CV-1827 Dkt.).)

Movant suggests that the Court should apply a heightened standard to the SEC in this case, because Movant is an attorney, and because some of the requested information regards his clients. (Movant's Mem. 5–6, 8–9.) This assertion is without merit and finds no support in the case law. In fact, courts have consistently held that bank records are not protected by the attorney-client privilege. *See, e.g.*, *SEC v. First Sec. Bank of Utah*, 447 F.2d 166, 167 (10th Cir. 1971) ("The deposit and disbursement of money in a commercial checking account are not confidential communications. The records are the property of the bank and are made by it for its business purposes."); *Harris v. United States*, 413 F.2d 316, 320 (9th Cir. 1969) ("[C]ourts have repeatedly held that checks and bank records are not subject to the protection of the attorney-client privilege."); *RBC Bank (USA) v. Epps*, No. 11-CV-124, 2012 WL 486626, at *2 (D.S.C.

---

[3] The SEC has advised that in discussions with Movant's counsel, it has agreed to limit its request with respect to Movant's personal accounts only to transactions involving $1000 or more, rather than $100, to filter out transactions that are likely to be purely personal. (SEC Opp'n at 9 n.7.) This undercuts Movant's claim that the Subpoena, as enforced, will be overly broad. *See In re John Doe*, 1990 WL 119321, at *2 (in denying motion to quash, noting that the SEC would only seek records related to transactions greater than $500, thus assuring "that purely personal transactions in small amounts will not be disclosed").

Feb. 14, 2012) (noting that movant had failed "to point to any authority that an attorney's bank records are protected by the attorney-client privilege," and that, in fact, "courts that have considered the issue have rejected such an argument"); *Nimmer v. SEC*, No. 11-CV-162, 2011 WL 3156791, at *3 (D. Neb. July 26, 2011) ("When an attorney acts as a conduit for a client's funds, attorney-client privilege does not apply."); *Grafstrom v. SEC*, 532 F. Supp. 1023, 1024 (S.D.N.Y. 1982) (denying motion to quash SEC subpoena and noting that "[s]ince the records are sought from banks and the Fidelity Daily Income Trust, they cannot be protected by the attorney-client privilege"). Moreover, allowing the SEC to subpoena an attorney's bank records does not contravene the public policy rationale that underlies the attorney-client privilege—facilitating disclosure between a client and his or her attorney to enable effective representation. *See First Sec. Bank of Utah*, 447 F.2d at 167 ("The maintenance of checking accounts is not shown to have any relevance to any communications made in confidence between a lawyer and client for the purpose of obtaining legal advice."). The Court therefore finds no basis to apply a heightened standard to the SEC here.

### III. Conclusion

For the reasons stated herein, Movant's motion is hereby DENIED.

SO ORDERED.

Dated:   November 13, 2012
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List:

John James Phelan, III
John J. Phelan, Iii, P.C
1325 Avenue of The Americas
27th Floor
New York, New York 10019
(212)-315-3082
jjphelaniii@att.net
*Counsel for Movant*

Leslie Kazon
U.S. Securities and Exchange Commission (3 World Financial)
Three World Financial Center
New York, New York 10281
212-336-1100
212-336-1324 (fax)
kazonl@sec.gov
*Counsel for Respondent*

Patrick Leo Oot
Securities and Exchange Commission (Washington, DC)
100 F Street, N.E.
Washington, District of Columbia 20549
(202) 551-5191
(202) 772-9263 (fax)
ootp@sec.gov
*Counsel for Respondent*